**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ALLISON C. A. WALLACE, ) | Case No.: 2:09-cv-1588-GMN-PAL |
| ) | |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| ) | |
| THE STATE OF NEVADA ex rel. ) | |
| BOARD OF REGENTS OF THE ) | |
| NEVADA SYSTEM OF HIGHER ) | |
| EDUCATION, on behalf of the ) | |
| UNIVERSITY OF NEVADA LAS ) | |
| VEGAS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## INTRODUCTION

Before the Court is Defendants the State of Nevada ex rel. Board of Regents of the Nevada System of Higher Education on behalf of the University of Nevada, Las Vegas, et al.'s Motion for Summary Judgment (ECF No. 37). Plaintiff Allison Wallace filed a Response (ECF No. 42) and Defendants filed a Reply (ECF No. 43).

Plaintiff acknowledges that dismissal of her First Claim for Relief against UNLV for Title VII Racial discrimination is appropriate. Likewise, Plaintiff concedes that the Eleventh Amendment to the United States Constitution provides a complete defense to her Second Claim for Relief against all Defendants in their official capacity for a violation of 42 U.S.C. Section 1983 Denial of Equal Protection.

## FACTS

Plaintiff was admitted as a graduate student in the University of Nevada, Las Vegas ("UNLV") Department of Science Ph.D. program in May of 2006. (Compl. ¶13, ECF No. 27.)

In August of 2006, the Department of Chemistry approved Plaintiff's request to enter the Chemistry Ph.D. program. (*Id.*) Plaintiff was also given employment by UNLV in order to assist her financially with her graduate studies and programs. (*Id.*) The UNLV Graduate College contains applicable academic policies, including the policies and regulations or graduate programs or departments. (MSJ, Ex. D, Academic Policies ECF No. 37–2.) It is the responsibility of the students to know and observe all regulations and procedures relating to their graduate program. (*Id.*) The Biological Science Ph.D. program requires three major examinations which a student may be required to pass in order to complete the program: Qualifying Examinations, Comprehensive or Final Examinations and an Oral Defense. (*Id.*) Doctoral students are advanced to candidacy upon successful completion of all course work, passing the comprehensive examination, and completing the dissertation prospectus. (*Id.*; MSJ, Ex. E, Graduate College Program Change Form, ECF No. 37–2.)

Students are assigned an advisor at the time of admission into the Graduate College. (Academic Policies.) The advisory committee, made up of the student's advisor and three graduate faculty members, guides the student through the graduate program, assists the student with their thesis or dissertations and administering the final examination. (*Id.*) Dr. Stephen Carper became Plaintiff's advisor in the Fall of 2006. (MSJ, Ex. A, Wallace Depo. 32:7–10; 33:11–16.) Plaintiff also invited faculty members Dr. Ernesto Abel-Santos, Dr. Vernon Hodge, and Dr. Bryan Spangelo to serve on her advisory committee. (*Id.* at 41:16–18.) Dr. Susan Meacham was the Graduate College Representative assigned to assure fairness in the process. (*Id.*)

Plaintiff completed her first year without incident. (Compl. at ¶ 15.) Plaintiff passed the written portion of the comprehensive exam in June 2007. (MSJ, Wallace Depo. at 46:9–17.) Thereafter Plaintiff needed to prepare for her oral examination. Before the meeting for the oral examination could take place in December of 2007, Dr. Carper unexpectedly passed away.

(Compl. at ¶ 15.) Dr. Carper's death left Plaintiff and two other master's degree students without a committee chair and advisor. (*Id.* at ¶¶16-17; MSJ, Wallace Depo. at 54: 4–12.) The two master's students were not African American. (*Id.*)

Plaintiff needed to find a new chairperson and asked Dr. Spangelo to take the position. (MSJ, Wallace Depo. at 58:20–24.) Dr. Gary, another biochemistry professor was asked to serve as a member on her committee after Dr. Spangelo took the role as committee chair. (*Id.* at 57:18–21.) Plaintiff, thereafter, had a meeting with her committee to determine her status in the program. At the meeting the committee decided that Plaintiff should redo her presentation with a fresh topic and they would give Plaintiff a list of topics to choose from. (*Id.* at 62:19–63:20) A new topic was picked and the oral examination was scheduled for late March 2008. (*Id.* at 66:4–15.)

The oral examination took place in March 2008 with the following individuals present: Dr. Spangelo as chairperson, and Drs. Abel-Santos, Hodge, Meacham, and Gary as members. (*Id.* at 67:24–68:1.) The committee did not issue a grade following Plaintiff's presentation. Shortly after the oral examination Plaintiff took steps to remove Dr. Spangelo as her Chair because he had allegedly made discriminatory remarks to Plaintiff. (Resp., Ex. 1, Wallace Depo. 84–86, 122–123, ECF No. 42–1.) Plaintiff filled out the necessary paperwork to change her committee chair with the Graduate College on April 4, 2008. (*Id.* at 97–98.) Dr. Larry Tiri signed the forms submitted by Plaintiff. (MSJ, Ex. K, Advisory Committee Form, ECF No. 37–4.) Dr. Abel-Santos agreed to serve on the committee, but Plaintiff would be placed on academic probation as a result of insufficient progress towards the degree and not advancing to candidacy on two separate occasions. (MSJ, Ex. L, April 8, 2008 Letter, ECF No. 37–4.) Plaintiff was placed on academic probation. It was not until May 2, 2008 that Plaintiff was issued a not passing grade for her oral examination by Dr. Spangelo. (MSJ, Ex. M, May 2 Memo, ECF No. 37-4.) Dr. Spangelo issued this grade independent of the other members of the

committee. (Resp., Ex. 2, Meacham Depo. 36:12–19, ECF No. 42–2.)

On June 5, 2008 a memo from David Hatchett, the Chemistry Department Graduate Coordinator, in conjunction with the Graduate College set forth two options regarding Plaintiff's Graduate Examination Committee and advancement to candidacy. (MSJ, Ex. O, June 5 Memo, ECF No. 37–5.) Plaintiff chose the second option which meant that she would start over with her oral examination from the beginning but she would have an entirely new Advisory Committee.

In August of 2008 Plaintiff started her research again. Dr. Abel-Santos resigned from the committee because he felt there would be conflict due to accusations against him by Plaintiff. (MSJ, Ex. S, Abel-Santos Depo. 19:17–23.) It appears that following his resignation Plaintiff could not continue forward toward her degree. Plaintiff could not complete her directed readings for Chem. 790 or obtain funding to continue her research and received an F in the course. (Resp. Wallace Depo. at 188–190; MSJ, Ex. X, May 1 Memo, ECF No. 37–6.) Plaintiff filed an appeal of this grade. Before Plaintiff received a decision on her appeal she was separated from the program. In May 2009 the Graduate College notified Plaintiff of her separation from the Program in the department based on Plaintiff's failure to make satisfactory progress toward her degree. (*Id.*) In June 2009, the Graduate College notified her that her appeal seeking reversal of her separation was denied. (MSJ, Ex. Z, June 30 Memo, ECF No. 37–6.)

## DISCUSSION

### I.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant

/ / /

/ / /

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[1]  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the

---

[1] Federal Rule of Civil Procedure 56 was recently amended, effective December 1, 2010. *See* Fed. R. Civ. P. 56 Advisory Committee Notes, 2010 Amendments. The standard for granting summary judgment remains the same. *Id.* Amendments to the Federal Rules of Civil Procedure govern proceedings that are pending at the time the amendments become effective, as long as the Supreme Court does not specify otherwise and the application would not be infeasible or work an injustice. Fed. R. Civ. P. 86(a)(2). Here, to prevent against any injustice to the parties, the Court will apply the language of Rule 56 that was in use prior to the new December 1, 2010 amendments. This earlier language was the language that was applicable when the Motion for Summary Judgment was filed and when the Response and Reply was submitted and, therefore, would be the most apt language to apply.

opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## II. ANALYSIS

Plaintiff alleges three causes of actions against the Defendants. Defendants move for summary judgment on all of Plaintiff's claims. Although Plaintiff concedes that her first claim and part of her second claims should be dismissed, Plaintiff argues that the individuals are still liable for a violation of Section 1983 denial of equal protection in their <u>individual</u> capacity under claim two. Plaintiff also argues that Defendants are still liable under her third claim for a violation of Title VI by intentionally discriminating against Plaintiff.

### A. 42 U.S.C. § 1983 Claim for Denial of Equal Protection against Individual Defendants

The Equal Protection Clause of the 14th Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439; 105 S.Ct. 3249 (1985). To state a claim under 42 U.S.C. § 1983 for a violation of the

Equal Protection Clause of the 14th Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 1988).

Defendants argue that they are entitled to qualified immunity in their individual capacities. Qualified immunity protects state officials from civil liability for damages resulting from discretionary acts, so long as those acts do not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800,817-18, 102 S.Ct. 2727 (1982). Qualified immunity under federal law is not merely a defense to liability; it is "'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985)). Analyzing whether a government official is entitled to qualified immunity involves two questions: (1) whether the facts alleged show the official violated a constitutional right; and (2) whether the right was clearly established such that a reasonable government official would know the conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Plaintiff tries to avoid summary judgment by arguing that she can prove discrimination by showing departures from procedural norms, a history of discrimination against others similarly situated or circumstantial evidence, such as a pattern of conduct inexplicable on grounds other than race. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265-266; 97 S.Ct. 555, 563-564 (1977). Plaintiff summarizes a study done by a Harvard Law Professor to support her claim that the UNLV faculty acted with a discriminatory attitude toward her. Plaintiff appears to be arguing that she can prove intent to discriminate based on the collective actions of the individual defendants. However, that is not the standard. Because Plaintiff is suing the defendants in their individual capacities she must provide specific evidence that each defendant, through their own actions, personally violated a constitutional

right of the Plaintiff.

The Court will now examine the evidence provided by Plaintiff to determine if there is a material issue regarding each individual's intent or purpose to discriminate.

1. Dr. Spangelo

Plaintiff alleges that Dr. Spangelo made derogatory racial remarks to her. Plaintiff claims that the remarks he made like "we have to be careful about who we give our degrees to in terms of people like you" and that he referred to her as "presumptuous and uppity" and "arrogant." (Reps., Wallace Depo. at 85:16–86:8; 123:8–124:17.) In May of 2008 Dr. Spangelo sent a memo to the committee summarizing Plaintiff's March 28, 2008 Oral Defense and Plaintiff's Advancement to Candidacy. (May 2 Memo.) The memorandum stated that Plaintiff's Oral Defense of the proposal was incomplete and not passing. The other members of the committee did not participate in this decision. (Meacham Depo. at 36:12–19.) Plaintiff had already removed Dr. Spangelo from her committee when this memo was issued. (Resp., Wallace Depo. at 84–85, 122–123.) This is the extent of actions taken by Dr. Spangelo that Plaintiff claims prove that he intentionally discriminated against Plaintiff.

Plaintiff argues although the comments appear neutral, that she comes from the South with a history of referring to African Americans who complained or did not follow the rules as being "uppity nig*$rs." If the court were to construe these comments as having racial overtones, isolated comments are not sufficient to establish a violation of the Fourteenth Amendment. *See, e.g., Elmahdi v. Marriott Hotel Services, Inc.*, 339 F.3d 645, 653 (8th Cir. 2003) (to satisfy high threshold of actionable harm, a plaintiff in an action under 42 U.S.C. § 1981 must show that his workplace was permeated with discriminatory intimidation, ridicule, and insult; the mere utterance of an epithet that engenders offensive feeling in an employee will not support a claim). However, in this case the comments are not isolated. Dr. Spangelo issued Plaintiff a failing grade without consulting the other members of the committee. Plaintiff

presents evidence from Dr. Meacham who believed that Plaintiff should have passed her oral examination. (Meacham Depo. at 34:7–8.)

The Court finds that there is a material issue of fact regarding Dr. Spangelo's actions. It is reasonable to conclude that a trier of fact could draw an inference from his comments and his role in giving Plaintiff a failing grade that he did such with a discriminatory intent. Therefore there is a question of fact whether a reasonable person would know that making the allegedly discriminatory remarks in conjunction with failing the student qualifies as racial discrimination in violation of the constitution. Accordingly, the Court will not dismiss Dr. Spangelo as a defendant in his individual capacity.

2. Dr. Abel-Santos

Dr. Abel-Santos was an original member of Plaintiff's advisory committee. Dr. Abel-Santos was part of the committee that neither passed nor failed Plaintiff but instead recommended that she "complete additional items." (April 8, 2008 Letter.) Dr. Abel-Santos took over as chair after Plaintiff removed Dr. Spangelo from her committee. (*Id.*) Dr. Abel-Santos resigned from Plaintiff's committee in the Fall of 2008 because Plaintiff made accusations against him and he felt there would be a conflict if he remained. (Abel-Santos Depo. at 19:17–23.) Plaintiff alleges that Dr. Abel-Santos' resignation left her without the ability to form an advisory committee and complete her coursework. Plaintiff alleges that Dr. Abel-Santos restricted the purchasing of her supplies that would prohibit her from proceeding with her research and denied buying her a cell line. (Resp., Wallace Depo. at 121:19–122:1; 188-190.)

None of the conduct of Dr. Abel-Santos as alleged by Plaintiff establishes that Dr. Abel-Santos intended to discriminate against her based on her membership in a protected class. Plaintiff does not explain how Dr. Abel-Santos' conduct was a departure from procedural norms, or that there was such as a pattern of conduct inexplicable on grounds other than race. Accordingly the second claim against Dr. Abel-Santos in his individual capacity is dismissed.

### 3. Ms. Hall-Carper

Plaintiff alleges that Ms. Hall-Carper tampered with her lab supplies. (MSJ, Wallace Depo. at 111:9–13; 112:14–24.) However Plaintiff supplies absolutely no evidence that suggest that Ms. Hall-Carper was motivated in some way by Plaintiff's race. Plaintiff also alleges that Ms. Hall-Carper joined in a complaint against her which eventually culminated in Plaintiff's removal from the Program, but there is similarly no evidence that this was done because of a racial animus toward Plaintiff. (Resp. Ex. 9 Faculty Complaint, ECF No. 42–9.) Accordingly the second claim against Ms. Hall-Carper in her individual capacity is dismissed.

### 4. Dr. Hatchett

Plaintiff's claim against Dr. Hatchett is confusing. Regarding the actions taken by Dr. Hatchett, he is alleged: (1) to have sent an e-mail stating there was no cause for Plaintiff's academic probation (Resp., Wallace Depo. at p. 220; June 5 Memo); (2) to have stated that Plaintiff should leave UNLV after the death of Dr. Carper (Meacham Depo. at p. 17–18); and (3) to field a retaliatory complaint against Ms. Wallace (Faculty Complaint). Plaintiff provides absolutely no evidence that any of these actions by Dr. Hatchett were done to intentionally discriminate against her and therefore the court dismisses the second claim against Dr. Hatchett.

### 5. Dr. Lindle

Dr. Lindle took over the management of funds after Dr. Carper died. (MSJ, Ex. G. Lindle Depo, 14:19–23; 35:6–16, ECF No. 37–3.) Plaintiff's original grant expired on February 27, 2009. Plaintiff however does not allege any conduct by Dr. Lindle that impeded Plaintiff from getting new research funds. The only allegation that could support that Dr. Lindle discriminated against Plaintiff is the fact that Dr. Lindle joined in the retaliatory complaint with the other professors. (Faculty Complaint.) Again, there is no evidence that this retaliatory complaint was done with a racial animus toward Plaintiff. The Court therefore, dismisses Plaintiff's second claim against Dr. Lindle.

### 6. Dr. Korgan

Dr. Korgan appears to have been the bearer of bad news with regard to Plaintiff's academic program. Dr. Korgan called and informed Plaintiff of issues with the Plaintiff's proposed committee members being unable to reconstitute the committee. (MSJ, Ex. V. Korgan-Depo, 13:22–14:7; 24:24–25:13, ECF No. 37–6.) Dr. Korgan read a letter from Dr. Abel-Santos at a meeting with Plaintiff wherein Dr. Abel-Santos resigned as chairperson, advisor, committee member, and instructor, severing any and all academic commitments to Plaintiff as a student. (Resp., Wallace Depo. at p.188-190.) At the meeting Dr. Korgan was instructed to find a professor for the course. Dr. Korgan also denied a grade appeal by Plaintiff. (May 1 Memo.) Plaintiff does not provide any evidence that would demonstrate that Dr. Korgan took any actions or inactions with intent to discriminate and accordingly the Court dismisses the second claim against Dr. Korgan.

### B. 42 U.S.C. § 2000d Claim for Intentional Discrimination

Title VI provides that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d. To properly state a claim for damages under Title VI, a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance. *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1437 (9th Cir. 1994). Title VI claims are analyzed under the same test as Title VII claims. Under Title VII claims a "plaintiff can establish a prima facie case of discrimination through either the burden-shifting framework set forth in *McDonnell Douglas* or with direct or circumstantial evidence of discriminatory intent." *Cohen-Breen v. Gray Television Group, Inc.*, 661 F.Supp. 2d 1158, 1165 (D.Nev. 2009). To establish a prima facie case of discrimination a plaintiff must demonstrate: (1) membership in a protected class, (2) meeting the school's legitimate educational

expectations, (3) an adverse education action, and (4) worse treatment than that of similarly situated students not in the protected class. *See Brewer v. Bd. of Trustees. of Univ. Illinois*, 479F.3d 908, 921 (7th Cir. 2007)(applying the *McDonnell Douglas* analysis to Title VI claim). Under *McDonnell* Douglas, once Plaintiff makes such a showing, the burden of proof shifts to the University to demonstrate that its actions were not discriminatory in nature. *Cohen-Breen*, 661 F.Supp. 2d at 1165. The burden would then shift to the plaintiff to show that the legitimate, nondiscriminatory reason for the adverse action was merely pretext. *Id.*

There is no dispute that UNLV was the beneficiary of federal funds. Thus, Plaintiff need only provide evidence that UNLV is engaging in racial discrimination to survive Defendants' Motion for Summary Judgment.

Plaintiff does establish a prima facie case of discrimination. Plaintiff, as an African American woman is a member of a protected class and Plaintiff's termination from the Ph.D. program constitutes an adverse education action.

There is evidence to show that Plaintiff was meeting the school's legitimate educational expectations as she was receiving A's and B's in her courses. (Resp., Ex. 3, Abel-Santos Depo. 19:12–16, ECF No. 42–3.) Defendants counter with evidence that Plaintiff was not meeting legitimate educational expectations. Plaintiff was responsible for submitting her proposed academic committee for the Graduate school to gain approval and Plaintiff did not properly submit her paper work to get approval. Plaintiff was put on academic probation due to the fact that she did not pass her oral defense twice Plaintiff earned an F in Chemistry 790 because she did not satisfy the academic requirements. Plaintiff failed to complete her dissertation work which is necessary to earn her degree. However, all of the evidence provided by Defendants that Plaintiff was not meeting the schools expectations are a result of Plaintiff's charges of discriminatory intent. Plaintiff alleges that her academic trouble began when she needed to form a new academic committee and present her oral defense. All the academic failings cited by the

Defendants arose out of the allegedly discriminatory treatment. The deposition testimony of Dr. Meacham confirms that Plaintiff was treated unfairly at her oral defense as well as before and after. Although the evidence may not be overwhelming, this is enough to create a material issue of fact regarding whether or not Plaintiff was legitimately meeting UNLV's academic expectations.

Finally, to establish a prima facie case of discrimination, Plaintiff provides evidence that there were similarly situated two master's students that were white that were treated more favorably than her. Dr. Carper was the committee chair for both Plaintiff and the master's students before his passing. All three students were placed in a situation where they needed to find new committee chairs. (MSJ, Wallace Depo. at 54:2–12.) There was an overlap between the professors who were on Plaintiff's committee and the master's students committees. While there are different academic requirements between the Ph.D. program and the master's programs, the students were similarly situated in all material respects. Dr. Meacham testified that the faculty was more lenient toward these two master's students and that one of the master's students was being moved forward without the necessary understanding of her project. (Meacham Depo. at 49:18–25.)

Accordingly, Plaintiff has established a prima facie case of discrimination. Defendants do not offer a legitimate non-discriminatory reason for her separation from the program, besides the argument that she was not meeting their legitimate educational expectations. However, as explained *supra* Plaintiff's coursework began to suffer after the allegedly discriminatory treatment. Therefore, Defendants have not satisfied its burden to defeat Plaintiff's prima facie case. Accordingly, there is a material issue of fact for trial whether Plaintiff was discriminated by Defendants in violation of Title VI.

In addition to Plaintiff's prima facie case of discrimination there is direct evidence of discriminatory intent. Dr. Meacham testified that Plaintiff was treated unfairly by her

committee. She also claimed that there were two Nigerian, black graduate students who were not going to pass and that the Chemistry Department was having trouble advancing black students in their doctoral programs. (Meacham Depo. at 39:11–40:13.) According to her, four out of five black students failed to advance in their careers or had been through considerable remediation issues during the time period Plaintiff was having issues. (*Id.* at 40:16–22.) The Court finds this to be sufficient evidence of discriminatory intent to create a genuine issue of material fact for trial.

## CONCULSION

**IT IS HEREBY ORDERED** that Defendants the State of Nevada ex rel. Board of Regents of the Nevada System of Higher Education on behalf of the University of Nevada, Las Vegas, et al.'s Motion for Summary Judgment (ECF No. 37) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's First Cause of Action for Title VII Racial Discrimination is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Cause of Action against UNLV and the individual Defendants in their official capacity for a violation of 42 U.S.C. Section 1983 Denial of Equal Protection is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Cause of Action against the individual Defendants in their personal capacity is **DISMISSED against all individuals, except Dr. Spangelo.**

DATED this 30th day of September, 2011.

_____
Gloria M. Navarro
United States District Judge